UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
SUNGLASSES AND THEN SOME, INC.,            Chapter 7
            DEBTOR                     Case No. 06-11087-WCH
_____

DONALD LASSMAN,
CHAPTER 7 TRUSTEE,                          Adversary Proceeding
            PLAINTIFF,                 No. 07-1180-WCH
v.
MAUREEN FISCHER and
COLETTE KURELJA,
            DEFENDANTS
_____

**MEMORANDUM OF DECISION**

I. INTRODUCTION

      The matters before the Court are Plaintiff's Motion for Partial Summary Judgment (the "Motion") filed by Donald Lassman as the Chapter 7 trustee (the "Trustee") of the estate of Sunglasses and Then Some, Inc. (the "Debtor"), Defendants' opposition thereto, and Defendants' Cross-Motion for Summary Judgment on All Counts of the Adversary Proceeding Complaint (the "Cross-Motion") filed by Maureen Fischer ("Fischer") and Colette Kurelja ("Kurelja") (collectively, the "Defendants"). For the reasons set forth below, I will enter an order denying the Motion and granting the Cross-Motion in part and denying it in part.

II. BACKGROUND

      The Debtor is a close corporation incorporated under the laws of Massachusetts. Prior to filing its Chapter 7 bankruptcy petition on April 20, 2006 (the "Petition Date"), the Debtor was a retailer of sunglasses on Martha's Vineyard, with a store in Vineyard Haven and another in Oak

1

Bluffs. The Defendants, also mother and daughter, are the sole officers, directors, and shareholders of the Debtor. In exchange for operating the Debtor's stores, the Defendants received weekly salaries of approximately $500-$750.

During its first two seasons, in 2000 and 2001, the Debtor enjoyed steady growth, but beginning in late 2001, the tourist industry began to slow, and concomitantly, sales dropped. To continue operating the Debtor, the Defendants, expecting to be repaid, loaned the Debtor funds on several occasions. These loans were noted on the Debtor's accounting records, and the funds were held in separate accounts. Beginning in May, 2005, the Defendants stopped receiving their weekly salaries from the Debtor, but they began receiving weekly loan repayments, averaging $500 (the "Loan Repayments"), which were deducted from the amounts the Debtor owed them. Out of the Loan Repayments, Fischer received a total of $5,760 and Kurelja received a total of $5,700.

To combat the short-lived tourist season on Martha's Vineyard, the Defendants also formed a Connecticut corporation, Sunglasses and Then Some Westport, Inc. (the "Westport Corporation"), in Westport, Connecticut, to take advantage of the seaside town's year-round tourist season. The Debtor and the Westport Corporation frequently exchanged inventory, and between February, 2004 and September, 2005, the Debtor, using a combination of its own funds and the Defendants' personal funds, transferred a total of $76,521 to or on behalf of the Westport Corporation. The Debtor transferred $19,500 of that total amount within one-year of the Petition Date.

On May 2, 2007, the Trustee commenced an adversary proceeding against the Defendants. Through the four-count Complaint, the Trustee asserts the following causes of action: Count I – Fraudulent Transfers ("Count I"); Count II – Breach of Fiduciary Duty

2

("Count II"); Count III – Disregard of Corporate Entities/Pierce Corporate Veil ("Count III"); Count IV – Preferences ("Count IV").  On March 23, 2009, after the Defendants filed an answer, the Trustee filed the Motion seeking summary judgment on Counts I and IV.  On April 29, 2009, the Defendants filed the Cross-Motion, seeking summary judgment on all counts.  I held a hearing on the Motion and the Cross-Motion on May 8, 2009, and at its conclusion, I took both matters under advisement.

III. POSITIONS OF THE PARTIES

    A. The Trustee

In seeking summary judgment on Count I, the Trustee argues that the transfers from the Debtor to the Westport Corporation were fraudulent under both 11 U.S.C. § 548 and the Uniform Fraudulent Transfer Act (the "UFTA"), codified at Mass. Gen. Laws ch. 109A, because the Debtor was insolvent and did not receive any value from the transfers, all of which occurred less than four years prior to the commencement of this adversary proceeding and many within two years before the petition date.

With respect to Count IV, the Trustee contends that the Loan Repayments to the Defendants are voidable preferences under 11 U.S.C. § 547.[1]  While the Defendants are unquestionably insiders, the Trustee maintains that the Loan Repayments were on account of antecedent debts because the Defendants described them as loan repayments.  The Trustee further notes that the Debtor was insolvent when it made the payments and that they were made within one-year of the Debtor's petition date.

---

[1] Unless expressly stated otherwise, all references to specific sections will be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

3

B. The Defendants

The Defendants both oppose the Trustee's Motion and move for summary judgment on all counts of the Complaint. With respect to Count I, the Defendants contend that the Trustee's fraudulent transfer claim is improperly asserted against them because the Westport Corporation was the transferee, not them. Moreover, the Defendants argue that the Debtor received reasonably equivalent value from financing the Westport Corporation because the Debtor was able to trade inventory with it.

Regarding Count II, the Defendants maintain that they exercised good business judgment and did not breach their fiduciary obligations to the Debtor. By capitalizing the Westport Corporation, the Defendants explain that the Debtor was able to use the Westport Corporation's inventory, which allowed it to avoid backorders from the products' manufacturers and lost opportunities in sales. With respect to Count III, the Defendants contend that the Debtor's corporate form should not be ignored, as the Defendants properly incorporated the Debtor and maintained financial records.

Lastly, on Count IV, the Defendants, acknowledging that the elements of § 547(b) are satisfied, contend that the Loan Repayments were a contemporaneous exchange for new value because the Defendants operated the Debtor's stores in exchange for the Loan Repayments. Further, the Defendants argue that the Loan Repayments were made in the ordinary course of the Debtor's business because it was not uncommon for the Debtor repay loans.

IV. DISCUSSION

A. The Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

4

and that the movant is entitled to judgment as matter of law."[2] The burden of proof is upon the moving party in the first instance.[3] To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact.[4] A material fact is one that has the "potential to affect the outcome of the suit under applicable law."[5]

When a motion for summary judgment is properly made and supported, the opposing party has an obligation to respond. The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."[6] Further, "if the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against that party.[7] The United States Court of Appeals for the First Circuit has explained this provision to mean that the absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment.[8] The moving party, therefore, must show that it is entitled to judgment as a matter of law.[9]

---

[2] Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)).

[3] *Steel Hector & Davis v. Wang Labs., Inc. (In re Wang Labs., Inc.),* 155 B.R. 289, 290 (Bankr. D. Mass. 1993).

[4] *Desmond v. Varrasso (In re Varrasso),* 37 F.3d 760, 763 n.1 (1st Cir. 1994); *Darr v. Muratore,* 8 F.3d 854, 859 (1st Cir. 1993); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976).

[5] *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[6] Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(e)(2)).

[7] *Id.* (emphasis added).

[8] *In re Varrasso,* 37 F.3d at 764.

[9] *Id.*

B. Count I—Fraudulent Transfers

Section 548 sets forth the powers of a trustee in bankruptcy to avoid fraudulent transfers. It reads in relevant part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or become, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolent as a result of such transfer or obligation. . . .[10]

Section 544(b) permits a trustee to avoid any transfer of a debtor's property that is voidable under applicable state law, including a state's fraudulent conveyance statute. The UFTA, the fraudulent conveyance statute in Massachusetts, defines a fraudulent transfer in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[10] 11 U.S.C. § 548(a)(1).

6

> (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. . . .[11]

Section 550 provides the remedy for a transfer that may be avoided, stating in pertinent part:

> (a) Except as otherwise provided in this section, to the extent that at transfer is avoided under section 544, 545, 547, 548, 549 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee. . . .[12]

"Transferee" is not defined in the Bankruptcy Code, but it is widely-accepted that a transferee is one who has "dominion over the money or other asset, the right to put the money to one's own purposes."[13] Nonetheless, "the mere power of a principal to direct the allocation of corporate resources does not amount to legal dominion and control."[14]

---

[11] Mass. Gen. Laws ch. 109A, § 5.

[12] 11 U.S.C. § 550.

[13] *Richardson v. Preston (In re Antex, Inc.)*, 397 B.R. 168, 172 (B.A.P. 1st Cir. 2008) (internal quotations omitted) (*citing Richardson v. United States (In re Anton Noll, Inc.)*, 277 B.R. 875, 879 (B.A.P. 1st Cir. 2002)).

[14] *In re Antex, Inc.,* 397 B.R. at 173 (*citing Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. L.P.)*, 99 F.3d 151, 155 (4th Cir. 1996)).

7

The undisputed facts demonstrate that the Defendants never had legal dominion and control over the funds transferred to or on behalf of the Westport Corporation. Although the Defendants controlled the Debtor's operations, the Debtor's funds were transferred directly to either the Westport Corporation or to other parties. Accordingly, I will enter summary judgment on Count I in favor of the Defendants.

C. Count II—Breach of Fiduciary Duty

Attendant to the duties of the directors of a corporation are the fiduciary duties of care and loyalty.[15] Directors "are bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation. . . ."[16] Corporate directors are not, however, liable "for mere errors of judgment or want of prudence. . . .[T]hey cannot ordinarily be held to personal responsibility for loss unless there is clear and gross negligence in their conduct."[17]

The duty of care requires corporate fiduciaries to "exercise the degree of care which a prudent person would ordinarily use,"[18] and "exercise reasonable intelligence in conducting the affairs of the corporation."[19] The fiduciary duty of loyalty "prohibits fiduciaries from promoting their own interests in a matter injurious to the corporation."[20]

---

[15] *Demoulas v. Demoulas Super Mkts., Inc.*, 424 Mass. 501, 528, 677 N.E.2d 159, 170 (1997) (citations omitted).

[16] *Id.*

[17] *Spiegel v. Beacon Participations, Inc.,* 297 Mass. 398, 411-12, 8 N.E.2d 895, 904 (1937) (internal quotations omitted).

[18] *Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729, 737 (1st Cir. 1982).

[19] *Ellis v. Varney*, 17 Mass. L. Rep. 394 (Mass. Super. Ct. 2003).

[20] *Id.* (*citing Geller v. Allied-Lyons PLC,* 42 Mass. App. Ct. 120, 122 (1997)).

The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[21]  The business judgment rule presumption can be rebutted where the directors engage in self-dealing or lack independence when objectively determining whether the transaction is in the best interest of the corporation.[22]

The Defendants rely on the protection of the business judgment rule.  In response, the Trustee merely argues that whether the business judgment rule is rebuttable in this case is a factually-intense query and one not proper for summary judgment.  Despite the presumption that the Defendants acted in the best interests of the Debtor, and the Trustee's failure to set forth specific facts showing a genuine issue for trial, the facts before me demonstrate self-dealing: the Debtor, while insolvent, helped capitalize a separate corporation that was wholly-owned by the Defendants.  Therefore, I do not find that the Defendants are entitled to judgment as a matter of law, and I will enter an order denying summary judgment on Count II.

D. Count III—Disregard of Corporate Entities/Pierce Corporate Veil

The shareholders of a corporation may be held personally liable for the corporation's unsecured debts when "they control the operation of the corporation and run it for their personal benefit, and where justice requires the separate existence of the corporation be ignored."[23]  In determining whether to pierce the corporate veil, courts look for factors including:

> pervasive control, confused intermingling of business activity assets or management, thin capitalization; nonobservance of corporate formalities, absence of a corporate record, no payment of dividends, insolvency at

---

[21] *Gray v. Barnett (In re Dehon, Inc.),* 334 B.R. 55, 63 (Bankr. D. Mass. 2005)(citations omitted).

[22] *Id.*

[23] *Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.,* 754 F.2d 10, 15 (1st Cir. 1985).

>    the time of the litigated transaction, siphoning away of corporate assets by dominating shareholders, non-functioning of officers and directors, use of the corporation for transaction of the dominant shareholder, and the use of the corporation in promoting fraud.[24]

The Defendants' arguments for summary judgment hinge solely on the fact that they followed all the corporate formalities in incorporating the Debtor and maintained accounting records. Again, the Trustee has not brought forth any issues for trial and notes only that a fact-specific analysis is required. I am unsatisfied, however, that the Defendants have shown that they are entitled to judgment as a matter of law on this issue. Summary judgment, therefore, will be denied on Count III.

### E. Count IV—Preferences

Preferences are defined in § 547(b). Section 547(b) reads in relevant part:

>    (b) [T]he trustee may avoid any transfer of an interest of the debtor in property—
>
>    (1) to or for the benefit of a creditor;
>
>    (2) to or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>    (3) made while the debtor was insolvent;
>
>    (4) made—
>
>    (A) on or within 90 days before the date of the filing of the petition; or
>
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

[24] *Mystic Donuts, Inc. v. Morrison*, 2001 WL 950891, at *2 (Mass. Super. August 13, 2001) (footnote omitted). *See also Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.,* 754 F.2d at 16.

> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .[25]

The Defendants do not advance any material issues of fact disputing whether the Loan Repayments are avoidable transfers under § 547(b). Instead, they rely on the affirmative defenses under § 547(c).

Section 547(c) immunizes certain transfers from avoidance even though those transactions meet all the requirements for avoidance under § 547(b). In relevant part, that section provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange
>
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms. . . .[26]

---

[25] 11 U.S.C. § 547(b).

[26] 11 U.S.C. § 547(c). The Defendants bear the burden of proof as to their affirmative defenses. 11 U.S.C.§ 547(g).

Contemporaneous exchanges for new value are exempted from avoidance pursuant to § 547(c)(1) "because other creditors are not adversely affected if the debtor's estate receives new value."[27] To prevail on the contemporaneous exchange defense, the transferee has the burden of proving (1) that the transferee advanced new value to the debtor in exchange for the payment, (2) that the transfer was "substantially contemporaneous" with the tender of the new value to the debtor, and (3) that the debtor and the transferee specifically intended for the transfer to represent an exchange for the new value.[28] "New value" is defined to include "money or money's worth in goods, services, or new credit. . . ."[29]

To prove that they advanced new value to the Debtor, the Defendants rely on the fact that they performed services for the Defendant in operating its stores, without receiving the weekly salary they had in seasons past. In turn, the Defendants concurrently eliminated the Debtor's payroll expenses and reduced the Debtor's outstanding debt. The Trustee's only contention is actually a misinterpretation of the facts that the Defendants have brought forward. Believing that the Defendants are attempting to re-characterize the Loan Repayments as salary, the Trustee maintains that there are material facts in dispute because the Loan Repayments were in fact payments on the loans and were not salary. The Defendants, however, admit that the Loan Repayments were indeed payments on the loans they made to the Debtor. No matter how the Loan Payments are characterized, the Defendants gave the Debtor new value for them by

---

[27] *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.),* 130 F.3d 323, 326 (8th Cir. 1997) (*citing Pine Top Ins. Co. v. Bank of America Nat'l Trust & Sav. Ass'n,* 969 F.2d 321, 324 (7th Cir. 1992)).

[28] 11 U.S.C. § 547(c)(1). *See also Gray v. Oppenheimer & Co. (In re Molten Metal Tech., Inc.),* 262 B.R. 172, 176 (Bankr. D. Mass. 2001).

[29] 11 U.S.C. § 547(a)(2).

12

operating the Debtor's stores, with the specific intent that the Loan Repayments would be exchanged for doing so. Further, the weekly transfers are sufficiently contemporaneous with the Defendants' services. Therefore, as the Debtor's estate has not been adversely affected by the Loan Repayments, I will grant summary judgment in favor of the Defendants on Count IV. Having ruled that I will grant summary judgment in favor of the Defendants, I need not and will not address the Ordinary Course of Business defense under § 547(c)(2).

V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order denying the Motion, granting summary judgment on Count I and on Count IV in favor of the Defendants on the Cross-Motion, and denying summary judgment on Count II and Count III of the Cross-Motion. The Court will schedule a pretrial hearing to discuss further proceedings.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 6, 2009